FILED

MAR 2 8 2016

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND HUNT,<br>CDCR #F-45185,<br><br>                              Plaintiff,<br><br>                vs.<br><br>JOSE OTERO, M.D.;<br>BRUCE FOERSTER, M.D.,<br><br>                              Defendants. | Case No.    15-cv-2885 BEN (BGS)<br><br>**ORDER:**<br><br>**(1)  GRANTING MOTION TO PROCEED IN FORMA PAUPERIS**<br><br>**(2)  DISMISSING CIVIL ACTION FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)(ii) AND § 1915A(b)(1)** |

Plaintiff Raymond Hunt, a prisoner currently incarcerated at Calipatria State Prison ("CAL") in Calipatria, California, and proceeding pro se, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. (Doc. No. 1.)

Plaintiff claims two private orthopedic surgeons from Alvarado Hospital, who contracted with the California Department of Corrections and Rehabilitation ("CDCR") to provide surgical care for an injury Plaintiff sustained to his left index finger while he was incarcerated at CAL in April 2012, and again in May 2013, violated his Eighth Amendment rights. (*See* Compl. at 2, 8-11.) Plaintiff seeks declaratory relief as well as general and punitive damages. (*Id.* at 11-12.) Plaintiff has

15cv2885

1  not prepaid the civil filing fee; instead he has filed a Motion to Proceed *In Forma*

2  *Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). (Doc. No. 2.)

3  **I.    PLAINTIFF'S MOTION TO PROCEED IFP**

4          All parties instituting any civil action, suit or proceeding in a district court of

5  the United States, except an application for writ of habeas corpus, must pay a filing

6  fee of $400. *See* 28 U.S.C. § 1914(a).[1] An action may proceed despite a plaintiff's

7  failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to

8  28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007);

9  *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is

10  granted leave to proceed IFP remains obligated to pay the entire fee in increments or

11  installments and regardless of whether his action is ultimately dismissed. *See* 28

12  U.S.C. § 1915(b)(1) & (2); *Bruce v. Samuels*, 136 S. Ct. 627, 630 (2016); *Williams v.*

13  *Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015); *Taylor v. Delatoore*, 281 F.3d 844,

14  847 (9th Cir. 2002).

15          Under 28 U.S.C. § 1915, as amended by the Prison Litigation Reform Act

16  ("PLRA"), a prisoner seeking leave to proceed IFP must submit a "certified copy of

17  [his] trust fund account statement (or institutional equivalent) for . . . the six-month

18  period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2);

19  *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust

20  account statement, the Court assesses an initial payment of 20% of (a) the average

21  monthly deposits in the account for the past six months, or (b) the average monthly

22  balance in the account for the past six months, whichever is greater, unless the

23  prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The

24  institution having custody of the prisoner then collects subsequent payments, assessed

25  at 20% of the preceding month's income, in any month in which his account exceeds

26

27          [1] In addition to the $350 statutory fee, civil litigants must pay an additional
administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of
28  Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2014). The additional $50
administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

$10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2).

In support of his IFP Motion, Plaintiff has submitted the certified copies of his trust account statements required by 28 U.S.C. § 1915(a)(2) and CivLR 3.2. The Court has reviewed Plaintiff's trust account statements, as well as the attached prison certificate issued by an accounting specialist at CAL verifying Plaintiff's account history and available balances. Plaintiff's statements show he has had $16.44 in monthly deposits, has carried an average balance of $12.45 in his account during the 6-month period preceding the filing of this action, and had $4.95 in available funds to his credit at the time of filing. Based on this financial information, the Court GRANTS Plaintiff's Motion to Proceed IFP (ECF Doc. No. 2), and assesses Plaintiff's initial partial filing fee to be $3.28 pursuant to 28 U.S.C. § 1915(b)(1).

However, the Court will direct the Secretary of the CDCR, or his designee, to collect this initial fee only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). The remaining balance of the $350 total fee owed in this case must be collected and forwarded to the Clerk of the Court pursuant to the installment payment provisions set out in 28 U.S.C. § 1915(b)(1).

## II.   INITIAL SCREENING PER 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)

### A.   Standard of Review

Notwithstanding Plaintiff's IFP status or the payment of any partial filing fees, the PLRA also obligates the Court to review complaints filed by all persons proceeding IFP and by those, like Plaintiff, who are "incarcerated or detained in any

1 facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of
2 criminal law or the terms or conditions of parole, probation, pretrial release, or
3 diversionary program," "as soon as practicable after docketing." 28 U.S.C.
4 §§ 1915(e)(2) and 1915A(b). Under these statutes, the Court must sua sponte dismiss
5 complaints, or any portions thereof, which are frivolous, malicious, fail to state a
6 claim, or which seek damages from defendants who are immune. 28 U.S.C.
7 §§ 1915(e)(2)(B) and 1915A(b); *see also Lopez v. Smith*, 203 F.3d 1122, 1126-27
8 (9th Cir. 2000) (en banc) (discussing § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d
9 1002, 1004 (9th Cir. 2010) (discussing § 1915A(b)).

10 　　　All complaints must contain "a short and plain statement of the claim showing
11 that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual
12 allegations are not required, but "[t]hreadbare recitals of the elements of a cause of
13 action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*,
14 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555
15 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a
16 context-specific task that requires the reviewing court to draw on its judicial
17 experience and common sense." *Id.* The "mere possibility of misconduct" falls short
18 of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d
19 962, 969 (9th Cir. 2009).

20 　　　"When there are well-pleaded factual allegations, a court should assume their
21 veracity, and then determine whether they plausibly give rise to an entitlement to
22 relief." *Iqbal*, 556 U.S. at 679; *see also Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir.
23 2000) ("[W]hen determining whether a complaint states a claim, a court must accept
24 as true all allegations of material fact and must construe those facts in the light most
25 favorable to the plaintiff."); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.
26 1998) (noting that section 1915(e)(2) "parallels the language of Federal Rule of Civil
27 Procedure 12(b)(6)").

28

15cv2885

1    However, while the court "ha[s] an obligation where the petitioner is pro se,

2    particularly in civil rights cases, to construe the pleadings liberally and to afford the

3    petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th

4    Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may

5    not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of*

6    *Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

7    **B.    Plaintiff's Allegations**

8    Plaintiff claims that on April 2, 2012, he "accidently broke his left hand index

9    finger, while in [his] cell." (Compl. ¶ 6.) Plaintiff contends he was referred to Jose

10   Otero, M.D., a "private contractor medical surgeon" at Alvarado Hospital, who

11   operated on his finger. Afterward, Plaintiff claims he remained in pain for "over a

12   year," and was unable to bend his finger, which was "twisted sideways, misaligned,

13   looked crooked, and [was] locked to one side." (*Id.* ¶¶ 7-9.)

14   Approximately one year later, on May 30, 2013, Plaintiff contends he was

15   again "taken to an outside hospital (in San Diego, CA) for a second surgery . . .

16   conducted by defendant M.D. Bruce Foerster, for the specific purpose of correcting

17   the previous surgery." (*Id.* ¶ 12.) On June 2, 2013, Plaintiff claims his bandage came

18   loose, and he noticed "no sutures closing the surgical wound." (*Id.* ¶ 14.) Plaintiff

19   claims this "resulted in [his] catching an infection," which required anti-biotic

20   treatment. (*Id.* ¶ 15.)

21   Plaintiff concludes both Dr. Otero and Dr. Foerster "fail[ed] to provide proper

22   medical care," which "resulted in a deliberate indifference." (*Id.* ¶ 19.)

23   **C.    42 U.S.C. § 1983**

24   "Section 1983 creates a private right of action against individuals who, acting

25   under color of state law, violate federal constitutional or statutory rights." *Devereaux*

26   *v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of

27   substantive rights, but merely provides a method for vindicating federal rights

28   elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal

15cv2885

quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### D.   Inadequate Medical Care

There is no question that prison officials act "under color of state law" when housing and providing medical care to prisoners. *See West v. Atkins*, 487 U.S. 42, 49-50 (1988) ("[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."). *West* also holds that a "private physician or hospital," like the Alvarado surgeons Plaintiff names as Defendants here, "act under color of law for purposes of § 1983," when they, as Plaintiff alleges, act as "contractors [] on behalf of the CDCR for Calipatria State Prison." (Compl. ¶ 4); *see also Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991) (per curiam) (finding state action where hospital "contract[ed] with the state . . . to provide medical services to indigent citizens"); *George v. Sonoma Cnty. Sheriff's Dep't*, 732 F. Supp. 2d 922, 934 (N.D. Cal. 2010) ("A private . . . hospital that contracts with a public prison system to provide treatment for inmates performs a public function and acts under color of law for purposes of § 1983.").

Therefore, in order to determine whether Plaintiff has pleaded a plausible claim for relief based on alleged denials of medical care, the Court must review his Complaint and decide whether it contains sufficient "factual content that allows [it] to draw the reasonable inference" that "each Government-official defendant, through the official's own individual actions, has violated the Constitution," and thus, may be held "liable for the misconduct alleged." *Iqbal*, 556 U.S. 676, 678.

Only "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 103, 104 (1976) (citation and internal

quotation marks omitted). "A determination of 'deliberate indifference' involves an examination of two elements: (1) the seriousness of the prisoner's medical need and (2) the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc) (quoting *Estelle*, 429 U.S. at 104).

First, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103-04). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *Id.* (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990); *Hunt v. Dental Dept.*, 865 F.2d 198, 200-01 (9th Cir. 1989)).

Plaintiff's allegation of having suffered a finger injury grave enough to require two referrals to an orthopedic surgeon is sufficient to show an objectively serious medical need. (*See* Compl. at 8-9, Pl.'s App'x A at 18); *see also McGuckin*, 974 F.2d at 1059; *Thompson v. Shutt*, No. 1:09-CV-01585 LJO, 2011 WL 674049, at *3 (E.D. Cal. Feb. 16, 2011) (finding a broken finger requiring "urgent surgery" constituted a serious medical need); *Atkins v. Brewer*, No. 07cv1027, 2009 WL 29873, at *4 (E.D. Cal. Jan. 5, 2009) ("Plaintiff's allegations that his finger was broken establishes that he had a serious medical need"); *cf. Jett v. Penner*, 439 F.3d 1091, 1096 n.1 (9th Cir. 2006) (noting undisputed fact that a fractured thumb was a serious medical need).

15cv2885

1    Even though Plaintiff's alleged medical needs are sufficiently serious, his
2    Complaint fails to include any further "factual content" to show that either Dr. Otero
3    or Dr. Foerster acted with "deliberate indifference" to his needs. *McGuckin*, 974 F.2d
4    at 1060; *see also Jett*, 439 F.3d at 1096; *Iqbal*, 556 U.S. at 678. Specifically, Plaintiff
5    must do more than conclude that Dr. Otero was "deliberately indifferent" simply
6    because Plaintiff was "unable to bend [said] finger or make a fist," and continued to
7    experience pain after his April 2012 surgery. (Compl. at 9.) He must also do more
8    than speculate that any infection he may have contracted after his second surgery was
9    caused by Dr. Foerster's "deliberate indifference." (*Id.* at 10); *see Iqbal*, 556 U.S. at
10   678 ("A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the
11   elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555).
12       Instead, Plaintiff must include "further factual enhancement" which
13   demonstrates both Otero and Foerster's "purposeful act or failure to respond to [his]
14   pain or possible medical need," and the "harm caused by [this] indifference." *Wilhelm*
15   *v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing *Jett*, 439 F.3d at 1096). This is
16   because to be deliberately indifferent, both Otero and Foerster's acts or omissions
17   must entail more than isolated acts of alleged negligence or the lack of due care. *Snow*
18   *v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks
19   omitted); *see also Wilhelm*, 680 F.3d at 1122; *Toguchi v. Chung*, 391 F.3d 1051, 1057
20   (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition,
21   without more, does not violate a prisoner's Eighth Amendment rights.").
22       In fact, as currently pleaded, Plaintiff's Complaint merely suggests that he
23   disagreed with Otero's initial decision to operate "based on the fact that [his] finger
24   joint wasn't damaged," and he "was still able to bend [his] finger" despite the
25   fracture. (Compl. at 8.) However, "[a] difference of opinion between a physician and
26   the prisoner–or between medical professionals–concerning what medical care is
27   appropriate does not amount to deliberate indifference." *Snow*, 681 F.3d at 987 (citing
28   *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)); *Wilhelm*, 680 F.3d at 1122-23.

1   Instead, Plaintiff must plead facts sufficient to "show that the course of treatment the

2   doctors chose was medically unacceptable under the circumstances and that the

3   defendants chose this course in conscious disregard of an excessive risk to [his]

4   health." *Snow*, 681 F.3d at 988 (citation and internal quotations omitted).

5          Plaintiff's allegations regarding Dr. Foerster fare no better, for they depend

6   upon his non-expert medical assessment that a lack of sutures following Dr.

7   Foerster's second surgery "resulted in . . . an infection." Plaintiff must instead allege

8   facts to show Foerster purposely or consciously failed to respond to a known risk that

9   Plaintiff faced a serious risk of harm. *Wilhelm*, 680 F.3d at 1122; *Snow*, 681 F.3d at

10  988; *Martin v. Traquina*, No. CIV S 05-0557 ALA P, 2007 WL 2254437, at *7 (E.D.

11  Cal. Aug. 3, 2007) (finding no deliberate indifference even where facts, if known,

12  "could have" or "should have" alerted prison doctor that inmate "faced a significant

13  risk of infection.").

14         Accordingly, the Court finds that Plaintiff's Complaint fails to state an Eighth

15  Amendment inadequate medical care claim against either Dr. Otero or Dr. Foerster,

16  and that therefore, it is subject to sua sponte dismissal in its entirety pursuant to 28

17  U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). Because he is proceeding pro se,

18  however, the Court having now provided him with "notice of the deficiencies in his

19  complaint," will also grant Plaintiff an opportunity to amend. *See Akhtar v. Mesa*,

20  698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261

21  (9th Cir. 1992)).

22  **III.    CONCLUSION AND ORDER**

23         Good cause appearing, the Court:

24         1.      **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C.

25  § 1915(a). (Doc. No. 2.)

26         2.      **ORDERS** the Secretary of the CDCR, or his designee, to collect from

27  Plaintiff's trust account the $3.28 initial filing fee assessed, if those funds are

28  available at the time this Order is executed, and to forward whatever balance remains

1   of the full $350 owed in monthly payments in an amount equal to twenty percent
2   (20%) of the preceding month's income to the Clerk of the Court each time the
3   amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL
4   PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER
5   ASSIGNED TO THIS ACTION;

6       3.      **DIRECTS** the Clerk of the Court to serve a copy of this Order on Scott
7   Kernan, Secretary, California Department of Corrections and Rehabilitation, P.O.
8   Box 942883, Sacramento, California, 94283-0001.

9       4.      **DISMISSES** Plaintiff's Complaint (ECF Doc. No. 1) for failing to state
10  a claim upon which § 1983 relief can granted pursuant to 28 U.S.C.
11  §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

12      5.      **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order
13  in which to re-open this case by filing an Amended Complaint which cures all the
14  deficiencies of pleading described in this Order. If Plaintiff elects to file an Amended
15  Complaint, it must be complete by itself without reference to his original pleading.
16  *See* CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542,
17  1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v.*
18  *Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with
19  leave to amend which are not re-alleged in an amended pleading may be "considered
20  waived if not repled.").

21      If Plaintiff fails to file an Amended Complaint within the time provided, this
22  civil action shall remain dismissed without prejudice.

23      **IT IS SO ORDERED**.

24
25  DATED: March 18, 2016
26                                          HON. ROGER T. BENITEZ
27                                          United States District Judge
28

-10-

15cv2885